**IN THE UNITED STATES DISTRICT COURT**

**FOR THE NORTHERN DISTRICT OF ILLINOIS**

| | |
|---|---|
| JESSICA DUVAL, individually and on behalf of herself and all others similarly situated, | |
| Plaintiff, | Case No. _____ |
| v. | |
| | (JURY TRIAL DEMANDED) |
| CITIZENS FINANCIAL GROUP, INC. AND JOHN DOES 1-50, | |
| Defendants | |

## PLAINTIFF'S CLASS ACTION COMPLAINT AND JURY DEMAND

Plaintiff Jessica Duval ("Plaintiff"), on behalf of herself and all persons similarly situated, by and through her attorneys, alleges as follows.

## INTRODUCTION

1.      This is a civil action brought on behalf of Plaintiff, individually, and on behalf of other similarly situated consumers relating to the unlawful practices of Defendants RBS Citizens, N.A. and Citizens Bank of Pennsylvania (both controlled by Citizens Financial Group, Inc.) (collectively "Citizens Bank" or "the Bank" or "Defendant").

2.      Plaintiff alleges that the Bank:

    a.  Charges Overdraft Fees or Insufficient Fund Fees (collectively, "Overdraft Fees") when in fact the customer has never overdrawn his/her checking account;

    b.  Fails to properly disclose its overdraft policies;

    c.  Charges Overdraft Fees when it never had to pay out more funds than were in the customer's checking account;

    d.  Provides false and misleading account balance information on the Bank's website, at the point of sale and at ATMs;

    e.  Charges Overdraft Fees when it makes check deposits available in an irregular and unpredictable way;

    f.  Violates Regulation E, including 12 C.F.R. §205.7, 12 C.F.R. §205.9 and 12 C.F.R. §205.16, and the Electronic Funds Transfer Act, including 15 U.S.C. §1693c and §1693h;

    g.  Re-orders electronic debit transactions from the highest dollar amount to lowest dollar amount so as to deplete the customer's available funds as quickly as possible while maximizing the number of Overdraft Fees collected by Citizens Bank; and

    h.  Breaches the contract it has with customers.

## PARTIES

3.      Plaintiff Jessica Duval is a resident of Goffstown, in the State of New Hampshire.

4.      The members of the putative Classes, defined below, are those individuals who have been harmed by Defendant's acts and practices, specifically those acts and practices related

to Defendant's unfair, deceptive, unconscionable, and bad faith assessment and collection of excessive Overdraft Fees through the means outlined above. Upon information and belief, members of the putative Classes number in the hundreds of thousands.

5. Citizens Financial Group, Inc. ("CFG") is a $151 billion commercial bank holding company. It is headquartered in Providence, R.I., and, through its subsidiaries, has more than 1,500 branches, approximately 3,500 ATMs and approximately 22,600 employees. Its two bank subsidiaries are RBS Citizens, N.A. and Citizens Bank of Pennsylvania. They operate a 12-state branch network under the Citizens Bank brand in Connecticut, Delaware, Massachusetts, New Hampshire, New Jersey, New York, Pennsylvania, Rhode Island and Vermont, and the Charter One brand in Illinois, Michigan and Ohio. CFG has non-branch retail and commercial offices in about 40 states. CFG is owned by RBS (The Royal Bank of Scotland Group plc).

6. Various others, presently unknown to Plaintiff, participated as co-conspirators with the Defendant in the violations of law alleged in this Complaint, and have engaged in conduct and made statements in furtherance thereof. The acts charged in this Complaint have been done by Defendant and its co-conspirators, or were authorized, ordered or done by its respective officers, agents, employees or representatives while actively engaged in the management of Defendant's business or affairs. These others shall be referred to herein as the "John Doe Defendants."

## JURISDICTION AND VENUE

7. This Court has subject matter jurisdiction over this class action pursuant to 28 U.S.C. § 1332, as amended by the Class Action Fairness Act of 2005, because the matter in controversy exceeds $5 million, exclusive of interest and costs, and is a class action in which

some members of the Classes are citizens of states different than Defendant. *See* 28 U.S.C. § 1332(d)(2)(A).

8.    This Court has personal jurisdiction over Defendant because Defendant owns and operates businesses that are located within this state.

9.    Venue properly lies in this district pursuant to 28 U.S.C. § 1391(a)(2) because a Defendant conducts substantial business in this judicial district. Defendant has sufficient minimum contacts with the State of Illinois and intentionally avails itself of the consumers and markets within the State of Illinois through the promotion, marketing, sale, and service of checking and savings accounts in this State.

## FACTUAL BACKGROUND

10.    Citizens Bank issues debit cards to its checking account customers. These debit cards allow its customers to have electronic access to their checking accounts in order to debit funds directly and instantaneously from their account for purchases from merchants, on-line usage, payment of bills, cash withdrawals, perform deposits at ATMs, and for other electronic debit transactions.

11.    Citizens Bank improperly charges Overdraft Fees and violates both state and federal law because it:

    a. Charges Overdraft Fees when in fact the customer has never overdrawn his/her checking account;

    b. Charges Overdraft Fees when it never had to pay out more funds than were in the customer's checking account and thus endured no losses whatsoever;

    c. Violates Regulation E, including 12 C.F.R. §205.7, 12 C.F.R. §205.9 and 12 C.F.R. §205.16 and the Electronic Funds Transfer Act, including 15 U.S.C. §1693c and §1693h;

    d. Provides false and misleading account balance information on the bank's website, at the point of sale, and at ATMs;

    e. Re-orders electronic debit transactions from the highest dollar amount to lowest dollar amount so as to deplete the customer's available funds as quickly as possible while maximizing the number of Overdraft Fees;

    f.   Does not clearly disclose and/or refuses to allow its customers to opt out of its overdraft protection program;

    g.   Does not obtain affirmative consent from its customers prior to processing transactions that will result in Overdraft Fees;

    h.   Does not alert its customers that a debit card transaction will trigger an Overdraft Fee, and does not provide its customers with an opportunity to cancel such transactions;

    i.   Charges exorbitant Overdraft Fees that bear no relationship to the actual costs and risks of covering insufficient funds transactions; and

    j.   Requires its customers to enter into standardized account agreements which include unconscionable provisions.

12.    Consumers are often surprised to discover that they are allowed to make debit card purchases even when they lack sufficient funds to do so. The Federal Reserve, which has the authority to regulate electronic funds transfers, including debit card purchases, issued a Final Rule in November, 2009, which severely restricts banks' ability to charge Overdraft Fees. The "Discussion" portion of the Rule states directly: "[M]any consumers may not be aware that they are able to overdraft at an ATM or POS. Debit cards have been promoted as budgeting tools, and a means for consumers to pay for goods and services without incurring additional debt. Additionally, the ability to overdraft at an ATM or POS is a relatively recent development. Consequently, consumers may unintentionally overdraw their account based on the erroneous belief that a transaction would be paid only if the consumer has sufficient funds in the account to cover it."

13.    Citizens Bank Overdraft Fees intentionally target the most vulnerable, least affluent sector of the population. According to the Center for Responsible Lending, consumers who repeatedly overdraw their account are more likely to be low-income, single, non-white, and renters. In its commentary to a recently promulgated rule severely restricting the ability of banks to charge Overdraft Fees, the Board of the Federal Reserve stated: "available research indicates that the large majority of overdraft fees are paid by a small portion of consumers who frequently

overdraw their accounts." Moreover, Overdraft Fees have actually increased during the recent economic turmoil.

14.     In its analysis of the income and age of accountholders with overdrawn accounts, the FDIC found that lower-income groups and young adults age 18-25 were the most likely to incur an Overdraft Fee. FDIC Study of Bank Overdraft Programs, Federal Deposit Insurance Corporation, (November, 2008). The FDIC also found that nearly three-quarters of its banks' service charge income was the result of Overdraft Fees – an amount estimated to exceed $27 billion annually.

15.     According to the Center for Responsible Lending, "Overdraft fees eat into the already-strained budgets of working families, with Americans now spending far more on overdraft fees annually than they do on common household items such as books, cereal or postage stamps. Americans spend about the same amount on overdraft fees as they do on fresh vegetables every year, and only a little less than they do on fresh fruit."

16.     Overdraft Fees are often triggered by small dollar transactions, most typically occurring when a debit card is used. As such, the credit extended to cover the shortfall is often far smaller than the Overdraft Fee charged. A $37 Overdraft Fee for a $5 fast food purchase is not uncommon – a transaction for which the consumer is charged 700% interest.

## CLASS ALLEGATIONS

17.     Plaintiff brings this action on behalf of herself and all others similarly situated pursuant to Fed. R. Civ. P. 23. This action satisfies the numerosity, commonality, typicality, adequacy, predominance and superiority requirements of Rule 23.

18.     The proposed Classes are defined as:

6

All Citizens Bank customers in the United States who, within the applicable statute of limitations preceding the filing of this action to the date of class certification, were improperly charged Overdraft Fees or not notified of such fees under any of the following circumstances: (a) when Citizens Bank never had to pay out more funds than were in the customer's checking account; (b) when the customer was provided false and misleading account balance information on the Bank's website, at the point of sale, or at an ATM; (c) when the customer's account had never been overdrafted; (d) when Citizens Bank re-ordered electronic debit transactions from the highest dollar amount to lowest dollar amount so as to deplete the customer's available funds as quickly as possible while maximizing the number of Overdraft Fees (the "National Class").

All Citizens Bank customers having accounts at branches in the State of New Hampshire who, within the applicable statute of limitations preceding the filing of this action to the date of class certification, were improperly charged Overdraft Fees or not notified of such fees under any of the following circumstances: (a) when Citizens Bank never had to pay out more funds than were in the customer's checking account; (b) when the customer was provided false and misleading account balance information on the Bank's website, at the point of sale, or at an ATM; (c) when the customer's account had never been overdrafted; ; (d) when Citizens Bank re-ordered electronic debit transactions from the highest dollar amount to lowest dollar amount so as to deplete the customer's available funds as quickly as possible while maximizing the number of Overdraft Fees (the "New Hampshire Subclass") (with National Class, collectively, the "Classes"). This Subclass asserts claims under the state consumer protection statute (*see* Seventh Claim for Relief, *infra).*

The National Class and the New Hampshire Subclass are collectively referred to as the "Classes."

19.     Plaintiff reserves the right to modify or amend the definition of the proposed Classes before the Court determines whether certification is appropriate.

20.     Excluded from the putative Classes are Citizens Bank, its parents, subsidiaries, affiliates, officers and directors, any entity in which Citizens Bank has a controlling interest, all customers who make a timely election to be excluded, governmental entities, and all judges assigned to hear any aspect of this litigation, as well as their immediate family members.

21.     The members of the putative Classes are so numerous that joinder is impractical. The putative Classes consist of thousands of members, the identity of whom is within the knowledge of and can be ascertained only by resorting to Citizens Bank's records.

22.     The claims of the representative Plaintiff are typical of the claims of the putative Classes in that the representative Plaintiff, like all putative Class members, was charged Overdraft Fees by Citizens Bank as a result of its practice of charging an Overdraft Fee when in fact the customer had never overdrawn his/her checking account; charging Overdraft Fees when Citizens Bank never had to pay out more funds than were in the customer's checking account; providing false and misleading account balance information on the bank's website, at the point of sale, and at ATMs; violating regulations implementing the National Bank Act and the Electronic Funds Transfer Act; violating the provisions of its Account Agreement; charging Overdraft Fees when it posted checks in an inconsistent manner; and re-ordering of electronic debit transactions from the highest dollar amount to lowest dollar amount so as to deplete the customer's available funds as quickly as possible while maximizing the number of Overdraft Fees.  The representative Plaintiff, like all putative Class members, has been damaged by Citizens Bank's misconduct because she has incurred and/or will continue to incur unfair and unconscionable Overdraft Fees.  Furthermore, the factual basis of Citizens Bank's misconduct is common to all putative Class members.

23.     There are numerous questions of law and fact common to the putative Classes and those common questions predominate over any questions affecting only individual putative Class members.

24.     Among the questions of law and fact common to the putative Classes are whether Citizens Bank:

a. Charges Overdraft Fees when in fact the customer had never overdrawn his/her checking account;

b. Charges Overdraft Fees when it never had to pay out more funds than were in the customer's checking account and thus endured no losses whatsoever;

c. Violates Regulation E, including 12 C.F.R. §205.7, 12 C.F.R. §205.9 and 12 C.F.R. §205.16, and the Electronic Funds Transfer Act, including 15 U.S.C. §1693c and §1693h;

d. Provides false and misleading account balance information on the bank's website, at the point of sale, and at ATMs;

e. Re-orders electronic debit transactions from the highest dollar amount to lowest dollar amount so as to deplete the customer's available funds as quickly as possible while maximizing the number of Overdraft Fees;

f. Does not clearly disclose and/or refuses to allow its customers to opt out of its overdraft protection program;

g. Does not obtain affirmative consent from its customers prior to processing transactions that will result in Overdraft Fees;

h. Does not alert its customers that a debit card transaction will trigger an Overdraft Fee, and does not provide its customers with an opportunity to cancel such transactions;

i. Charges exorbitant Overdraft Fees that bear no relationship to the actual costs and risks of covering insufficient funds transactions;

j. Breaches its covenant of good faith and fair dealing with Plaintiff and the other members of the putative Classes through its overdraft policies and practices;

k. Converts moneys belonging to Plaintiff and the other members of the putative Classes through its overdraft policies and practices;

l. Requires its customers to enter into standardized account agreements which include unconscionable provisions;

m. Breaches its contract with the Plaintiff and the other members of the putative Classes;

n. Is unjustly enriched through its overdraft policies and practices;

o. Violates the regulations implementing the National Bank Act, including but not limited to 12 C.F.R. §7.4002;

p. Violates the consumer protection acts of New Hampshire and through its overdraft policies and practices; and

q. Continues to commit wrongdoing through its overdraft policies and practices.

25. Other questions of law and fact common to the putative Classes include:

a. The proper method or methods by which to measure damages; and

b. The injunctive relief to which the putative Classes are entitled.

26. Plaintiff's claims are typical of the claims of other putative Class members, in that they arise out of the same wrongful overdraft policies and practices and the same or substantially

similar unconscionable provisions of Citizens Bank's account agreements and other related documents.

27.     Plaintiff has suffered the harm alleged and has no interests antagonistic to the interests of any other putative Class member.

28.     Plaintiff is committed to the vigorous prosecution of this action and has retained competent counsel experienced in the prosecution of class actions. Accordingly, Plaintiff is an adequate representative and will fairly and adequately protect the interests of the putative Classes.

29.     A class action is superior to other available methods for the fair and efficient adjudication of this controversy. Since the amount of each individual putative Class member's claim is small relative to the complexity of the litigation, and due to the financial resources of Citizens Bank, no putative Class member could afford to seek legal redress individually for the claims alleged herein. Therefore, absent a class action, the putative Class members will continue to suffer losses and the misconduct of Citizens Bank will proceed without remedy.

30.     Even if putative Class members themselves could afford such individual litigation, the court system could not. Given the complex legal and factual issues involved, individualized litigation would significantly increase the delay and expense to all parties and to the Court. Individualized litigation would also create the potential for inconsistent or contradictory rulings. By contrast, a class action presents far fewer management difficulties, allows claims to be heard which might otherwise go unheard because of the relative expense of bringing individual lawsuits, and provides the benefits of adjudication, economies of scale and comprehensive supervision by a single court.

**A.      Citizens Bank's Misleading, Unconscionable, Deceptive and Incomplete Disclosures in its Account Agreement**

31.     Plaintiff Duval has a checking account with Defendant Citizens Bank.  Plaintiff opened her account in 2009.

32.     After opening the checking account with Citizens Bank, Plaintiff was provided with a "Personal Deposit Account Agreement" ("Account Agreement").  Within the thirty-six pages of fine print of this pamphlet are the following relevant and contradictory provisions:

> "**6. Withdrawals**. We will not permit withdrawals from your account unless there are sufficient funds available in your account..."
>
> **12. Payment of Checks and Other Transactions.**  We may pay checks, in-person withdrawals, ATM withdrawals, point-of-sale transactions, or any other paper or electronic transactions (Transactions) in any order determined by us, even if (a) paying a particular Transaction results in an insufficient balance in your account to pay one or more other Transactions that otherwise could have been paid out of your account, or (b) using a particular order results in the payment of fewer Transactions that otherwise could have been paid out of your account.
>
> **13. Overdrafts/Insufficient Funds.**  We determine from time to time during each business day whether or not your account contains sufficient available funds to pay a Transaction (e.g., a check, in-person withdrawal, ATM withdrawal, point-of-sale Transaction, or any other paper or electronic Transaction).  If we determine that your account has insufficient available funds to pay a Transaction, you agree to pay an overdraft/insufficient funds fee, and we are not required to honor the Transaction and may return or decline it."

33.     The provisions in Account Agreement paragraphs 12 and 13 are in contrast to Defendant's actual practice and policy of automatically and in every case permitting transactions to occur despite inadequate funds.

34.     The "Withdrawals" disclosure comes six sections before any mention of possible Overdraft Fees.  It directly states that account holders will not be able to withdraw cash or make a debit card purchase if there are not sufficient funds in the account.  As discussed *infra*, Plaintiff was allowed to both withdraw cash and make point of sale purchases when the Bank claimed she had insufficient funds to do so.

35.     The clauses that specify the Bank may pay debits even if "paying a particular Transaction results in an insufficient balance in your account to pay one or more other Transactions that otherwise could have been paid out of your account, or (b) using a particular order results in the payment of fewer Transactions that *otherwise* could have been paid out of your account" (emphasis added) directly imply that Transactions for which there are not sufficient funds will not be paid (the word "otherwise" operates to mean such transactions will not be paid). As discussed *supra*, this directly contradicts Citizens Bank's actual policy of paying all transactions, including those for which there are supposedly insufficient funds.

36.     The clauses in the "Overdrafts/Insufficient Funds" section are both unconscionable and misleading, as they fail to accurately describe the procedure Citizens Bank uses to determine whether an Overdraft Fee is charged, as discussed *infra*. The term "available funds" is nowhere defined. Further, the consumer has no idea what "from time to time" can mean. Below, Plaintiff will detail how Citizens Bank uses these contractual uncertainties to directly and intentionally harm account holders.

37.     Even if Plaintiff was given a collection of discrete contractual clauses that purport to authorize or disclose Citizens Bank's practices as described above, this notice is neither sufficient nor effective. The interaction of several contractual clauses, themselves unclear, here combine to exert an unconscionable and materially deceptive effect which no lay person could possibly have foreseen. Furthermore, no collection of clauses or disclosure can grant Citizens Bank the right to manipulate and abuse checking account transactions to achieve the most Overdraft Fees on a consumer's account, even when that account was never overdrawn.

38.     Citizens Bank fails to adequately notify and explain to its customers that it engages in a systematic policy of charging Overdraft Fees when in fact the customer had never overdrawn his/her checking account.

39.     Citizens Bank fails to adequately notify and explain to its customers that it engages in a systematic policy of charging Overdraft Fees when it never had to pay out more funds than were in the customer's checking account.

40.     Citizens Bank fails to adequately notify and explain to its customers that it fails to provide accurate account balance information on the Bank's website, at the point of sale, or at ATMs.

41.     Citizens Bank fails to adequately notify and explain to its customers that it engages in a systematic policy of re-ordering electronic debit transactions from the highest dollar amount to lowest dollar amount so as to deplete the customer's available funds as quickly as possible while maximizing the number of Overdraft Fees.

**B.      Citizens Bank Charges Overdraft Fees Even When It Never Had to Pay Out More Funds Than Were in the Customer's Checking Account and Uses the Same Debit to Cause Overdraft Fees both at Authorization and at Settlement**

42.     A debit card can be used to make a purchase in two ways: an "ACH" transaction in which a customer enters his/her PIN number at the point of sale; or an "offline signature" transaction. In the former, the money is debited from the account nearly instantaneously. On the other hand, the "offline signature" transaction occurs in two parts: first, authorization for the purchase amount is obtained by the merchant. When a merchant swipes a customer's debit card, the credit card terminal connects, via an intermediary, to the customer's bank, which verifies that the customer's account is valid and that sufficient funds are available to cover the transaction's cost. At this step, Citizens Bank holds the funds and deducts them from the bank balance, but

does not yet transfer the funds to the merchant. At some later time, the settlement process begins, wherein the funds are transferred from the customer's accounts to the merchant's accounts. This process is not instantaneous: it can take as long as several days for funds to be deposited in the merchant's account. The actual charge is not put through until the merchant submits its batch of transactions and the banking system transfers the funds. While the merchant has obtained an authorization from the individual's bank by swiping the card through its credit card terminal, the actual balance with the bank has *does not change until settlement*, because the merchant has not actually collected the funds in question. The transaction is not actually "settled" (that is, money between the bank and the merchant changes hands) until the merchant submits the transaction to the bank some time after the customer's purchase.

43.     Citizens Bank never discloses the difference between these two methods of using a debit card in its Account Agreement, causing consumers to choose a method of payment without information as to how such a choice will affect the accuracy of real time account balance information and liability for Overdraft Fees.

44.     Citizens Bank uses this gap between authorization and settlement to its advantage to create an overdraft that never actually occurs and is strictly theoretical. The Bank retroactively constructs a picture of what the account balance *would have been had all transactions settled immediately, even when there are funds in the account to cover the purchases at the time of settlement.* That is, Citizens Bank makes Overdraft Fee determinations neither at the time of settlement, nor even at the time of authorization. Rather, at the time of settlement the Bank charges Overdraft Fees as if it had settled the transactions immediately. This is a fiction, strictly created to advantage the bank and disadvantage its customers. Because the time between authorization and settlement is often one in which customers make deposits to

their accounts to cover debits, Citizens Bank's policy is designed solely to charge more customers Overdraft Fees. The policy serves no function in ensuring the soundness or efficiency of the banking system. These overdrafts are "theoretical" because due to the gap between authorization and settlement, the customer's account never actually was overdrawn, and Overdraft Fees are charged without cause ("Theoretical Overdraft"). Such Theoretical Overdrafts, further, are hidden on account statements issued by the Bank, which often show Overdraft Fees even where the account balance is never shown to be negative.

45. A Theoretical Overdraft is especially egregious when a customer has deposited money on the same day that a supposed "overdraft" transaction occurred, but the funds are not made available immediately per bank policy. That is, the Bank creates a notional picture of the account balance as if all debits settled immediately, but does not create a notional picture of the account balance as if all deposits had posted immediately.

46. The Bank's use of Theoretical Overdrafts unlawfully caused financial losses to Plaintiff and improper gains to the Bank. For example, on August 25, 2009, Plaintiff was charged an Overdraft Fee of $22, *even though she had a balance of over 490 dollars at the time*. Also, on August 26, Plaintiff was charged an Overdraft Fee of $37, *even though she had a balance of over 450 dollars at the time.* And on August 26, Plaintiff was charged an Overdraft Fee of $37, *even though she had a balance of over 220 dollars at the time.* These charges were incurred because the Bank manipulated the purchases and debits in the following manner in order to cause a Theoretical Overdraft:

   a. On August 21, 2009, Plaintiff's account balance ended the day at $845.48.
   b. Between the end of August 21 and August 24, Plaintiff made a series of purchases and debits totaling $380.59.
   c. On August 24, Plaintiff received two credits to her account, totaling $25.97, leaving her with an ending balance of $490.68 on August 24.

d.  On August 25, Plaintiff made a cash ATM withdrawal in the amount of $40 at a Citizens Bank ATM, and the Bank immediately charged her an Overdraft Fee of $22, even though she had over 490 dollars in her account at the time of withdrawal.

e.  On August 26, the Bank settled a purchase Plaintiff had made on August 25 for $199, and immediately charged her an Overdraft Fee of $37.00, even though she had a current account balance of over $450 at the time.

f.  Upon information and belief, Citizens Bank retroactively constructed a fictionalized account balance on August 25, deducting all "pending" transactions from Plaintiff's account even before settlement, in order to charge an Overdraft Fee.

g.  Moreover, Citizens Bank knew Plaintiff had funds in her account well in excess of the amount actually needed by the Bank for settlement on August 26.

h.  At no point did the Bank "lend" Plaintiff money or otherwise provide funds for a purchase not fully covered by Plaintiff's current account balance. In sum, Citizens Bank charges Overdraft Fees even when it suffers no harm, makes no extension of credit, and endures no loss of its own funds.

i.  On August 27, the Bank settled a purchase Plaintiff had made on August 25 for $20.56, and immediately charged her an Overdraft Fee of $37.00, even though she had a current account balance of over $220 at the time.

j.  Upon information and belief, Citizens Bank retroactively constructed a fictionalized account balance on August 25, deducting all "pending" transactions from Plaintiff's account even before settlement, in order to charge an Overdraft Fee.

k.  Moreover, Citizens Bank knew Plaintiff had funds in her account well in excess of the amount actually needed by the Bank for settlement on August 27.

l.  At no point did the Bank "lend" Plaintiff money or otherwise provide funds for a purchase not fully covered by Plaintiff's current account balance. In sum, Citizens Bank charges Overdraft Fees even when it suffers no harm, makes no extension of credit, and endures no loss of its own funds.

m.  On August 27, the Bank settled a purchase Plaintiff had made on August 25 for $118.49, and immediately charged her an Overdraft Fee of $37.00, even though she had a current account balance of over $220 at the time.

n.  Upon information and belief, Citizens Bank retroactively constructed a fictionalized account balance on August 25, deducting all "pending" transactions from Plaintiff's account even before settlement, in order to charge an Overdraft Fee.

o.  Moreover, Citizens Bank knew Plaintiff had funds in her account well in excess of the amount actually needed by the Bank for settlement on August 27.

p.  At no point did the Bank "lend" Plaintiff money or otherwise provide funds for a purchase not fully covered by Plaintiff's current account balance. In sum, Citizens Bank charges Overdraft Fees even when it suffers no harm, makes no extension of credit, and endures no loss of its own funds.

47. The Bank compounds this abuse by using the same debit transaction to charge an Overdraft Fee in two different ways, at both authorization and settlement. For example, a $199 purchase at "Skydive New England," made on August 25, was used as justification for charging an Overdraft Fee for a $40 cash ATM withdrawal at a Citizens Bank ATM machine because such charge was "pending" at the time of the ATM withdrawal.

48. Secondly, the Bank used the same $199 purchase to charge another Overdraft Fee when that purchase settled one day later.

49. Citizens Bank's use of the same transaction before settlement to charge Overdraft Fees for other purchases should preclude it from using the same transaction to later justify another Overdraft Fee. Such a transaction has already been accounted for in the overall picture of a consumer's debits. Citizens Bank attempts to put the same transaction in two places at the same time: it uses the unposted transactions to create a Theoretical Overdraft and the posted transactions to create a second overdraft at time of settlement, creating a never-ending chain specifically intended to use whatever manipulations possible to drive an account into negative balance, real or imagined.

50. Citizens Bank breaches the Account Agreement, violates state consumer protection laws, and engages in an unconscionable practice when it "holds" funds for authorization, but does not then dedicate such funds for eventual settlement of such transaction.

51. Such unconscionable policies are not disclosed.

52. Charging an Overdraft Fee when in fact an account has never been over-drafted is materially deceptive.

17

53. In constructing Theoretical Overdrafts, the Bank does not process the electronic funds transfers in a timely fashion, in violation of the Electronic Funds Transfer Act, including §1693h.

54. Theoretical Overdrafts are "transaction fees" that must be "disclosed on the receipt and displayed on or at the terminal," per Regulation E, 12 C.F.R. §205.9.

55. The Bank's practice of debiting funds from customers' checking account before funds are delivered to payees is a "float," and as such is a fee that must be disclosed at the point of sale or in the Account Agreement.    Citizens Bank fails to disclose this fee.  Lack of disclosure violates the Electronic Funds Transfer Act ("EFTA") and Regulation E, 12 C.F.R. §205.9.

56. Such machinations are not explained on Citizens Bank's periodic statements, online account statements, or transaction histories.  Citizens Bank simply debits the Overdraft Fee without any explanation as to how the customer came to be charged that fee. The date of the Overdraft Fee, in the majority of cases, does not correspond to the date of the transaction, even though Citizens Bank uses the date of the transaction to determine whether an account has gone into overdraft.  As such, a customer is unable to make efforts to prevent future Overdraft Fees.

57. Because consumers lose an opportunity to earn interest on funds not yet transferred to payees during the period between authorization and settlement, a fee results even when an Overdraft Fee does not result.  These losses are "transaction fees" that must be "disclosed on the receipt and displayed on or at the terminal," per Regulation E, 12 C.F.R. §205.9.

58. The lack of clear explanation on periodic statements violates the Electronic Fund Transfer Act, 15 U.S.C. 1693 et seq., ("EFTA") and Regulation E, 12 CFR Part 205:

> For an account to or from which requires an electronic fund transfers can be made, a financial institution to provide consumers with account-opening disclosures and toshall send a periodic statement for each monthly cycle in which an electronic fund transfer ("EFT") has occurred; and shall send a periodic statement at least quarterly if no transfer has occurred. If, under an overdraft protection program, a consumer could overdraw an account by means of an ATM withdrawal or POS debit card transaction, both are EFTs subject to EFTA and Regulation E. Periodic statements must be readily understandable and accurate regarding debits made, current balances, and fees charged. The statement shall set forth the following information, as applicable:

> > (1) Transaction information. For each electronic fund transfer occurring during the cycle:

> > > (i) The amount of the transfer;
> > > (ii) The date the transfer was credited or debited to the consumer's account;
> > > (iii) The type of transfer and type of account to or from which funds were transferred;
> > > (iv) For a transfer initiated by the consumer at an electronic terminal (except for a deposit of cash or a check, draft, or similar paper instrument), the terminal location described in paragraph (a)(5) of this section; and
> > > (v) The name of any third party to or from whom funds were transferred. 12 C.F.R. §205.9(b).

59. This practice violates consumer protection laws and the covenant of good faith and fair dealing in the Bank's Account Agreement.

60. Citizens Bank misleads its customers regarding its overdraft reordering practices.

**C.    Citizens Bank Inconsistently Posts Debits and Credits, Using Whatever Method Maximizes Overdraft Fees, and Treats All Purchases as a Block**

61. In combination with Theoretical Overdrafts, Citizens Bank also groups charges into one block for purposes of determining when an account has gone into a negative balance.

When a Theoretical Overdraft policy alone does not result in Overdraft Fees, Citizens Bank in addition treats all pending transactions as a block.

62. This practice violates consumer protection laws and the covenant of good faith and fair dealing in the Bank's Account Agreement.

63. Citizens Bank misleads its customers regarding its inconsistent posting and block posting practices.

64. As with Theoretical Overdrafts, Citizens Bank creates a fictionalized account balance, as if all transactions had settled immediately. In addition, even if transactions do settle on the same day they are authorized, Citizens Bank persists in treating them as part of a "block" of transactions, *even when the pending transactions occurred at an earlier time.* When the later transactions have settled and been paid, there is no conceivable reason to continue treating them as part of the "block" of pending charges.

65. For example:

    a. On September 11, 2009, Plaintiff's account balance ended the day at $272.26.

    b. Between the end of September 11 and September 14, Plaintiff made a series of purchases and debits totaling $281.82.

    c. One September 14, the Bank settled five purchases totaling $197.27.

    d. Two of those purchases were settled by the bank for $31, causing the immediate charging of two Overdraft Fees of $39, even though Plaintiff had over 280 dollars in her account at the time of settlement, and even though she had over 80 dollars in her account even after paying the other purchases that settled that day, and even though those purchases were made on the same day (September 14) that they were authorized.

    e. These two purchases settled the same day as they were authorized, but Citizens Bank treated them as part of a "block" of transactions that were pending at the time, charging a $39 Overdraft Fee for each.

    f. On September 15, Plaintiff made a deposit in the amount of $1625.83.

    g. Also on September 15, an earlier authorized transaction from the "block" settled for $10.64.

    h. The last "block" transactions settled on September 16.

      i.   At no point did the Bank "lend" Plaintiff money or otherwise provide funds for a purchase not fully covered by Plaintiff's current account balance. In sum, Citizens Bank charges Overdraft Fees even when it suffers no harm, makes no extension of credit, and endures no loss of its own funds.

**D.    Citizens Bank Provides False and Misleading Account Balance Information and Does Not Warn Customers that Purchases Will Result in Overdraft Fees at the Point of Sale and at its Own ATM Machines, in Violation of Regulation E**

66.    Upon information and belief, at no time did Citizens Bank's online account information, or ATM balance information, show a negative balance or otherwise warn Plaintiff that she had overdrawn, or was going to overdraw, her checking account.

67.    Plaintiff incorporates allegations above.

68.    When Plaintiff made purchases with her debit card, Citizens Bank did not provide her access to accurate electronic balance information.

69.    In some instances, Citizens Bank actually informs its customers that they have a positive balance when, according to Citizens Bank's own information and policies, they have a negative balance.

70.    Even when Citizens Bank has actual knowledge of outstanding transactions which have created a negative balance in a customer's account, the Bank encourages the customer to incur more Overdraft Fees by approving further debit card purchases and other electronic transactions.

71.    As the Board of the Federal Reserve stated in the "Discussion" section of its recent Final Rule limiting Overdraft Fees,

> "Even if a consumer checked his or her balance prior to a transaction, the balance may not be updated, so the consumer may inadvertently overdraw his or her account on the belief funds are available. On balance, the Board believes financial institutions are in a better position to mitigate the information gap by developing improved processing and updating systems, as they have in recent years, and as the Board expects they will continue to do over time."

72.     Plaintiff repeats the allegations above regarding Defendant' violation of EFTA and Regulation E requirements.

73.     Citizens Bank's lack of disclosure of Overdraft Fees violates Regulation E, including 12 C.F.R. §205.7 and 12 C.F.R. §205.9, which requires a financial institution to provide an accurate receipt at the point of sale, including total cost and any fees associated with the transaction; and the Electronic Funds Transfer Act, including 15 U.S.C. §1693c and §1693h, which requires an institution to provide consumers with account-opening disclosures and to send a periodic statement for each monthly cycle in which an EFT has occurred and at least quarterly if no transfer has occurred.

74.     Terminal receipts also must be readily understandable and accurate regarding the amount of the transfer.  According to 12 C.F.R. §205.9, "[A] financial institution shall make a receipt available to a consumer at the time the consumer initiates an electronic fund transfer at an electronic terminal. The receipt shall set forth the following information, as applicable:   (1) Amount. The amount of the transfer. A transaction fee may be included in this amount, provided the amount of the fee is disclosed on the receipt and displayed on or at the terminal."

75.     With specific regard to the debit card transactions which result in an Overdraft Fee, Citizens Bank does not disclose such fees "at the time the consumer initiates an electronic fund transfer."  These Overdraft Fees are "transaction fees" that must be "disclosed on the receipt and displayed on or at the terminal, per Regulation E.

76.     Upon information and belief, at no time did Bank's online account information warn Plaintiff that they had overdrawn, or were going to overdraw, their checking accounts with further purchases.

77.     As discussed in Section B, *supra*, Citizens Bank charged Plaintiff an Overdraft Fee of $22 when an ATM withdrawal was supposedly paid with insufficient funds.

78.     Such an Overdraft Fee directly contradicts the provision of the Account Agreement discussed in Section 15, supra, which states that "[w]e will not permit withdrawals from your account unless there are sufficient funds available in your account[.]"

79.     Such an Overdraft Fee violates 12 C.F.R. §205.16(b), which states:

> An automated teller machine operator that imposes a fee on a consumer for initiating an electronic fund transfer or a balance inquiry shall:
>
>> (1) Provide notice that a fee will be imposed for providing electronic fund transfer services or a balance inquiry; and
>> (2) Disclose the amount of the fee.

80.     Such a disclosure must be made by "showing it on the screen of the automated teller machine or by providing it on paper, *before the consumer is committed to paying a fee*." 12 C.F.R. §205.16(c)(2) (emphasis added).

81.     Citizens Bank makes no such disclosures.

**E.      Citizens Bank Re-orders Electronic Debit Transactions From the Highest Purchase Amount to Lowest Purchase Amount**

82.     Citizens Bank manipulates and reorders debits from highest to lowest during given periods of time.  The Bank reorders transactions for no reason having to do with the soundness of the banking system or operational efficiency, but only to maximize Overdraft Fees it can charge. This practice violates consumer protection laws and the covenant of good faith and fair dealing in the Bank's Account Agreement.

83.     Citizens Bank misleads its customers regarding its reordering practices. The Bank states in its Account Agreement that "[m]ethods available to the Bank for processing checks and other items for payment include, but are not limited to, by dollar amount from highest to lowest,

by number or by date." This statement is deceptive because, in fact, the Bank automatically and systematically reorders all debit transactions from highest to lowest, and because the Bank groups together debit card transactions that occurred on subsequent days with transactions that occurred on earlier days, and reorders them so that higher debits that occurred on subsequent days are posted to its customers' accounts before lower debits that occurred on earlier days, contrary to the terms of the Bank's Account Agreement and its customers' reasonable expectations. This statement is also deceptive for the reasons discussed in Sections B, C, and D, *supra.*

84.     Transactions involving debit cards used by Citizens Bank customers, including the withdrawal of cash from ATM machines and point of sale transactions with vendors, are processed electronically. As a result, Citizens Bank is notified instantaneously when a transaction occurs. Notwithstanding the instantaneous nature of these electronic debit card transactions, Citizens Bank fails to post charges in the order in which they are authorized or received. Instead of processing such transactions in chronological order, Citizens Bank processes them starting with the largest debit and ending with the smallest debit. Citizens Bank follows this policy solely to maximize the number of Overdraft Fees charged to customers.

85.     Citizens Bank's practices ensure that smaller charges will result in multiple Overdraft Fees. The Bank's policy is specifically designed to maximize the generation of Overdraft Fees by triggering Overdraft Fees for account charges that would not otherwise result in such fees. The practices provide Citizens Bank with substantially higher service fee revenues than it would otherwise achieve absent these practices.

86.     As a result, Plaintiff and members of the putative Classes have been assessed Overdraft Fees for transactions which occurred when they actually had sufficient funds in their accounts to cover those transactions.

87.     For example, between August 24 and 28, 2009, Plaintiff incurred four Overdraft Fees because the Bank manipulated the purchases and debits, posting debits from the highest transaction amount to the lowest transaction amount in order to maximize the number of Overdraft Fees:

      j.  On August 21, 2009, Plaintiff's account balance ended the day at $845.48.

      k.  Between the end of August 21 and August 24, Plaintiff made a series of purchases and debits totaling $380.59.

      l.  On August 24, Plaintiff received two credits to her account, totaling $25.97, leaving her with an ending balance of $490.68.

      m.  On August 25, plaintiff made a cash ATM withdrawal in the amount of $40 at a Citizens Bank ATM, and the Bank immediately charged her an Overdraft Fee of $22, even though she had over 490 dollars in her account at the time of withdrawal.

      n.  On August 26, the Bank settled a purchase Plaintiff had made on August 25 for $199, and immediately charged her an Overdraft Fee of $37.00, even though she had a current account balance of over $450 at the time.

      o.  On August 27, the Bank settled three purchases Plaintiff had made on August 25 for $20.56, $118.49, and $178.20, and immediately charged her two Overdraft Fees of $37.00, even though she would not have been charged only one Overdraft Fee if the debits had been posted in the order in which they were authorized.

      p.  On August 27, the Bank settled a purchase Plaintiff had made on August 25 for $118.49, and immediately charged her an Overdraft Fee of $37.00, even though she had a current account balance of over $220 at the time.

      q.  On August 28, the Bank settled a purchase Plaintiff had made on August 25 for $5.98, and immediately charged her an Overdraft Fee of $37.00

      r.  If, in the time from of August 24 to August 28, Citizens Bank had debited Plaintiff's account in the order charges were authorized, Plaintiff would have been charged only one Overdraft Fee instead of four.

88.     These Overdraft Fees are "transaction fees" that must be "disclosed on the receipt and displayed on or at the terminal, per Regulation E, 12 C.F.R. §205.9.

**F.      Citizens Bank Does Not Clearly Disclose and/or Refuses to Allow its Customers to Opt Out of its Overdraft Protection Program**

89.      The terms of Citizens Bank's checking accounts are contained in standardized Account Agreements, presented to its customers only after an account has been opened.  Such agreements are drafted and imposed by Citizens Bank, which is the party of vastly superior bargaining strength, and thus constitute agreements of adhesion. A representative copy of the Account Agreement is attached as Exhibit A.

90.      The Account Agreement provided to customers is ineffective, ambiguous, deceptive, unfair, and misleading in that it does not unambiguously state that the Bank always reorders debits from high to low, even though, among other improper practices, the Bank systematically and automatically reorders transactions in this way for customers in order to maximize overdrafts and Overdraft Fee revenues for the Bank.

91.      According to the "Discussion" section of the Federal Reserve final rule on Overdraft Fees, the current disclosure situation is as follows:  "some institutions may disclose the opt-out right in a clause in their deposit agreement, which many consumers may not notice or may not consider relevant because they do not expect to overdraw their accounts."  Contrary to such common practices, Citizens Bank makes no mention of a right to opt-out of overdraft coverage in its Account Agreement.

**G.      Citizens Bank's Overdraft Policies and Practices are Contrary to Best Practices**

92.      By engaging in the conduct described herein, Citizens Bank has failed to follow the list of "best practices" for overdraft programs set forth in the "Joint Guidance on Overdraft Protection Programs" ("Joint Guidance") issued by the United States Department of the Treasury, the Office of the Comptroller of the Currency, the Board of Governors of the Federal Reserve System, the Federal Deposit Insurance Corporation, and the National Credit Union

Administration (collectively, the "Agencies"). These "best practice" recommendations include: "Provide election or opt-out of service. Obtain affirmative consent of consumers to receive overdraft protection. Alternatively, where overdraft protection is automatically provided, permit consumers to opt-out of the overdraft program and provide a clear consumer disclosure of this option." 70 F.R. 9127-01, 9132.

93.     The Joint Guidance also advises banks to "[a]lert customers before a transaction triggers any fees. When consumers attempt to withdraw or transfer funds made available through an overdraft protection program, provide a specific consumer notice, where feasible, that completing the withdrawal may trigger the overdraft fees." 70 F.R. 9127, 9132. The Joint Guidance further advises that "[t]his notice should be presented in a manner that permits consumers to cancel the attempted withdrawal or transfer after receiving the notice." Id.

94.     Citizens Bank's overdraft policies make it difficult for customers to avoid injury even if they carefully track the balance in their account. In fact, the Agencies have stated that "Injury" resulting from such policies "is not reasonably avoidable" by the consumer. 73 F.R. 28904-01, 28929. "It appears that consumers cannot reasonably avoid this injury if they are automatically enrolled in an institution's overdraft service without having an opportunity to opt out. Although consumers can reduce the risk of overdrawing their accounts by carefully tracking their credits and debits, consumers often lack sufficient information about key aspects of their account. For example, a consumer cannot know with any degree of certainty when funds from a deposit or a credit for a returned purchase will be made available."

95.     Because substantially all national banks have the same, or nearly the same, Overdraft Fees and methods for charging Overdraft Fees, consumers do not have any meaningful

choice between banks. Plaintiff was in effect precluded from opening a new checking account at an institution with less onerous overdraft policies.

**H. Citizens Bank's Overdraft Practices Violate Regulations Implementing the National Bank Act**

96.     12 C.F.R. § 7.4002(a), promulgated by the OCC, authorizes a national bank to engage in activities that are part of, or incidental to, the business of banking as well as to engage in certain specified activities listed in the statute. Pursuant to 12 U.S.C. § 24(Seventh) and the OCC's regulations, a national bank may charge its customers a fee. The relevant section of the OCC regulation states:

> (a) *Authority to impose charges and fees*. A national bank may charge its customers non-interest charges and fees, including deposit account service charges.

97. A bank must exercise its authority to establish fees in a manner that is consistent with safe and sound banking practices. Paragraph (b) of section 7.4002 sets out the factors that the bank should consider in ensuring that its process for setting its fees and charges meets this standard:

> (b) *Considerations*. (1) All charges and fees should be arrived at by each bank on a competitive basis and not on the basis of any agreement, arrangement, undertaking, understanding, or discussion with other banks or their officers. (2) The establishment of non-interest charges and fees, their amounts, and the method of calculating them are business decisions to be made by each bank, in its discretion, according to sound banking judgment and safe and sound banking principles. A national bank establishes non-interest charges and fees in accordance with safe and sound banking principles if the bank employs a decision-making process through which it considers the following factors, among others:
>
>> (i) The cost incurred by the bank in providing the service;
>> (ii) The deterrence of misuse by customers of banking services;

(iii)  The enhancement of the competitive position of the bank in accordance with the bank's business plan and marketing strategy; and
(iv)  The maintenance of the safety and soundness of the institution. 12 C.F.R. § 7.4002.

98.     Citizens Bank violates § 7.4002(2)(i) because the Overdraft Fees it charges bear no relation to the cost incurred in providing the overdraft service.  The Bank charges this fee, as above, even when it has never had to pay out more money than in the account and even when the overdraft is de minimis.  The Bank charges an Overdraft Fee even when it endures no losses whatsoever associated with the purported overdraft.

99.     Citizens Bank violates § 7.4002 (b)(1) because substantially all national banks have the same, or nearly the same, Overdraft Fees and methods for charging Overdraft Fees, thus depriving consumers of any meaningful choice between banks.

100.    Plaintiff does not challenge the Bank's fundamental right to employ an Overdraft Fee.  Rather, Plaintiff challenge the Bank's manipulation of customers' transaction records so as to maximize penalties imposed on customers.

I.      **Citizens Bank's Overdraft Practices Harmed Plaintiff**

101.    Plaintiff is a current account holder of Citizens Bank.

102.    Citizens Bank wrongfully charged Plaintiff multiple Overdraft Fees.

103.    Based on information and belief, the Overdraft Fees incurred by Plaintiff are representative of hundreds of millions of dollars of Overdraft Fees that Citizens Bank wrongfully assessed and deducted from its customers' accounts.

J.      **The Damages Sustained by Plaintiff and the Classes**

104.    As shown by the above examples, Citizens Bank's overdraft policies make it difficult for a customer to avoid injury even if the customer keeps close track of the balance in

his or her account. In fact, the Agencies have stated that "injury" resulting from such policies "is not reasonably avoidable" by consumers. 73 F.R. 28904-01, 28929. "It appears that consumers cannot reasonably avoid this injury if they are automatically enrolled in an institution's overdraft service without having an opportunity to opt out. Although consumers can reduce the risk of overdrawing their accounts by carefully tracking their credits and debits, consumers often lack sufficient information about key aspects of their account. For example, a consumer cannot know with any degree of certainty when funds from a deposit or a credit for a returned purchase will be made available." Id.

105.     Due to Citizens Bank's overdraft policies and practices, Plaintiff and the putative Classes have been wrongfully forced to pay Overdraft Fees.  Defendant has improperly deprived Plaintiff and the putative Classes of significant funds, causing ascertainable monetary losses and damages.

106.     Due to Defendant's unlawful policies, it has wrongfully deprived Plaintiff and the putative Classes of funds to which it had no legitimate claim.

107.     Plaintiff and members of the putative Classes had sufficient funds in their accounts to cover at least some of the transactions for which they were charged Overdraft Fees. Plaintiff and members of the putative Classes either had adequate funds to cover the transactions posted to their accounts, or the accounts were allowed to become overdrawn so that Citizens Bank could impose improper charges.

108.     All conditions precedent to the relief sought herein have either occurred or have been performed or waived.

## **FIRST CLAIM FOR RELIEF**

**Breach of the Covenant of Good Faith and Fair Dealing and Breach of Contract**
**(On Behalf of the National Class and New Hampshire Subclass)**

109.    Plaintiff repeats paragraphs 1 through 108 above.

110.    Where a contractual agreement permits one party to unilaterally determine the extent of the other's required performance, an obligation of good faith in making such a determination is implied. Defendant Bank may unilaterally choose whether to impose Overdraft Fees by posting transactions in any order it wishes by unilaterally deciding whether to honor requested transactions when consumers have insufficient funds. Because the occurrence, amount, and frequency of Overdraft Fees are set unilaterally by Defendant, it has an obligation to impose Overdraft Fees on consumers' bank accounts in good faith. Defendant Bank has breached this obligation by intentionally delaying and rearranging the posting of transactions to accounts in a manner which maximizes the number of Overdraft Fees. For example, Citizens Bank has the ability to post check card transactions to checking accounts immediately because it is made aware of check card transactions as they occur due to the electronic nature of these transactions. Instead of posting check card transactions to accounts immediately, however, or even posting check card transactions in chronological order, the Bank chooses to delay the posting of these transactions for hours or days and re-order these transactions in a nonchronological fashion so as to maximize the imposition of Overdraft Fees.

111.    In breach of its duties of good faith and fair dealing, Defendant Bank has assessed excessive, unreasonable, and unnecessary Overdraft Fees against Plaintiff and putative Class members.

112.    Plaintiff seeks a judicial declaration determining that the charges actually levied by Citizens Bank are not consonant with its duties of good faith and fair dealing. Plaintiff also seeks compensatory damages resulting from the Bank's breach of its duties of good faith and fair dealing.

113.    Subterfuge and evasion violate the obligation of good faith in performance even when an actor believes his conduct to be justified. Bad faith may be overt or may consist of inaction, and fair dealing may require more than honesty. Examples of bad faith are evasion of the spirit of the bargain, willful rendering of imperfect performance, abuse of a power to specify terms, and interference with or failure to cooperate in the other party's performance. Moreover, individual contractual clauses, themselves vague and misleading, combine to exert a further breach of the covenant of good faith and fair dealing.  No lay person could possibly read the Account Agreement to permit the imposition of Overdraft Fees in the manner employed by Citizens Bank.

114.    Since at least 2004, Defendant Bank has breached the covenant of good faith and fair dealing in the Account Agreement through its overdraft policies, authorization policies, and practices as alleged herein.

115.    Plaintiff and members of the putative Classes have performed all, or substantially all, of the obligations imposed on them under the Account Agreement.

116.    Plaintiff and members of the putative Classes have sustained damages as a result of the Bank's breach of the covenant of good faith and fair dealing.

### SECOND CLAIM FOR RELIEF
**Breach of Contract**
**(On Behalf of the National Class and New Hampshire Subclass)**

117.    Plaintiff repeats paragraphs 1 through 108 above.

118.    Defendant has breached its contract with Plaintiff as alleged herein.

119.    By charging Overdraft Fees when in fact the customer's account has not been over-drafted, Citizens Bank breached its contract with Plaintiff.

120.    Citizens Bank breaches its contractual duty to charge Overdraft Fees only when an overdraft occurs because it engages in a systematic policy of charging Overdraft Fees when in fact the customer had never overdrawn his/her checking account.

121.    Citizens Bank breaches its contractual duty to charge Overdraft Fees only when an overdraft occurs because it engages in a systematic policy of charging Overdraft Fees when it never had to pay out more funds than were in the customer's checking account.

122.    Citizens Bank breaches the Account Agreement when it makes the sufficiency of funds determination at the time of settlement, not the time of the transaction.

123.    Plaintiff and members of the putative Classes have sustained damages as a result of Citizens Bank's breach of contract as alleged herein.

### THIRD CLAIM FOR RELIEF
**Unconscionability**
**(On Behalf of the National Class and New Hampshire Subclass)**

124.    Plaintiff repeats paragraphs 1 through 108 above.

125.    The imposition of Overdraft Fees which far exceed the amount overdrawn is itself unconscionable.

126.    The imposition of Overdraft Fees when the customer has not even overspent her account is itself unconscionable.

127.    The imposition of Overdraft Fees when the Bank never has to put forth more money than the amount in the customer's account, due to the delay in settlement of offline debit card transactions, is itself unconscionable.

128.    Defendant's overdraft policies and authorization practices, and the purported contractual provisions which reveal them unclearly, if at all, are substantively and procedurally unconscionable in the following respects, among others:

a. The Bank combines every possible manipulation of the timing of deposits and the timing of debit posting in a way which could not be foreseen by the average customer;

b. The Bank does not disclose or reasonably disclose to customers that they have the option to "opt out" of the Bank's overdraft scheme;

c. The Bank does not obtain affirmative consent from checking account customers prior to processing a transaction that will overdraw the account and result in an Overdraft Fee;

d. The Bank does not alert its customers that a debit card transaction of ATM withdrawal will trigger an overdraft, and does not provide the customer the opportunity to cancel that transaction, before assessing an Overdraft Fee;

e. The Account Agreement is a contract of adhesion in that they are standardized forms, imposed and drafted by the Bank, which is a party of vastly superior bargaining strength, and only relegates to the customer the opportunity to adhere to them or reject the agreement in its entirety;

f. The amount of Overdraft Fees is disclosed in an ineffective, ambiguous, misleading, and unfair manner; and

g. The Account Agreement provided to customers is ineffective, ambiguous, deceptive, unfair, and misleading in that it does not unambiguously state that the Bank always reorders debits from high to low.

129. Due to the great disparity in the parties' relative bargaining power, the inconspicuousness and incomprehensibility of the contract language at issue, the oppressiveness of the terms, the commercial unreasonableness of the contract terms, the purpose and effect of the terms, the allocation of the risks between the parties, and similar public policy concerns, these provisions are unconscionable and, therefore, unenforceable as a matter of law.

130. Plaintiff and members of the putative Classes have sustained damages as a result of the Bank's unconscionable policies and practices as alleged herein.

**FOURTH CLAIM FOR RELIEF**
**Conversion**
**(On Behalf of the National Class and New Hampshire Subclass)**

131. Plaintiff repeats paragraphs 1 through 108 above.

132. Defendant had a duty to maintain and preserve its customers' checking accounts and to prevent their diminishment through its own wrongful acts.

133. Defendant has wrongfully collected, or caused to be collected, Overdraft Fees from Plaintiff and the members of the putative Classes, and has taken specific and readily identifiable funds from their accounts in payment of these fees in order to satisfy them.

134. Defendant has, without proper authorization, assumed and exercised the right of ownership over these funds, in hostility to the rights of Plaintiff and the members of the putative Classes, without legal justification.

135. Defendant has, without proper authorization, assumed and exercised the right of ownership over these funds by placing undisclosed authorization holds, in hostility to the rights of Plaintiff and the members of the putative Classes, without legal justification.

136. Defendant intends to permanently deprive Plaintiff and the members of the Classes of these funds.

137. These funds are properly owned by Plaintiff and the members of the putative Classes, not the Bank, which now claims that it is entitled to their ownership, contrary to the rights of Plaintiff and the members of the putative Classes.

138. Plaintiff and the members of the putative National Class are entitled to the immediate possession of these funds.

139. Defendant's wrongful conduct is continuing.

140. As a direct and proximate result of this wrongful conversion, Plaintiff and the members of the putative Classes have suffered and continue to suffer damages.

141. By reason of the foregoing, Plaintiff and the members of the putative Classes are entitled to recover from Defendant all damages and costs permitted by law.

**FIFTH CLAIM FOR RELIEF**
**Unjust Enrichment**
**(On Behalf of the National Class and New Hampshire Subclass)**

142. Plaintiff repeats paragraphs 1 through 108 above.

143. Plaintiff, on behalf of herself and the putative Classes, asserts a common law claim for unjust enrichment.

144. By entering into Account Agreements with and providing overdraft payments to Citizens Bank, Plaintiff and putative Class members conferred a tangible economic benefit upon Defendant. Plaintiff and putative Class members would have expected remuneration from Defendant at the time the benefit was conferred had they known the true facts regarding Defendant's practices and policies. Failing to require Defendant to provide remuneration under these circumstances would result in it being unjustly enriched.

145. Defendant was and continues to be unjustly enriched at the expense of Plaintiff and Class members.

146. Defendant's retention (without an offsetting return payment) of the benefit conferred upon it by Plaintiff and members of the putative Classes would be unjust and inequitable.

147. Under the common law doctrine of unjust enrichment, it is inequitable for Defendant to be permitted to retain the benefits it received, and is still receiving, without justification, from the imposition of Overdraft Fees on Plaintiff and members of the putative Classes in an unfair, unconscionable, and oppressive manner.

148. The financial benefits derived by Defendant rightfully belong to Plaintiff and members of the putative Classes. Defendant should be compelled to disgorge in a common fund for the benefit of Plaintiff and members of the putative Classes all wrongful or inequitable proceeds received by them. A constructive trust should be imposed upon all wrongful or

inequitable sums received by Citizens Bank traceable to Plaintiff and the members of the putative Classes.

149.    Plaintiff and members of the putative Classes have no adequate remedy at law.

### SIXTH CLAIM FOR RELIEF
**Violation of the Electronic Funds Transfer Act and Regulation E**
**(On Behalf of the National Class and New Hampshire Subclass)**

150.    Plaintiff repeats paragraphs 1 through 108 above.

151.    Plaintiff asserts a claim based on Regulation E, including 12 C.F.R. §205.7, 12 C.F.R. §205.9 and  12 C.F.R. §205.16, and the Electronic Funds Transfer Act, including 15 U.S.C. §1693c and §1693h, because Citizens Bank failed to disclose the fees it charged for making a debit card purchase at the point of sale, at ATMs, or in its Account Agreement.  The Bank further failed to adequately explain Overdraft Fees on periodic statements.

152.    Plaintiff asserts a claim based on Regulation E, including 12 C.F.R. §205.7 and 12 C.F.R. §205.9, and the Electronic Funds Transfer Act, including 15 U.S.C. §1693c and §1693h, because the interest Citizens Bank gained on the "float" in a Theoretical Overdraft constituted a "fee" that the EFTA requires be disclosed.

153.    Plaintiff asserts a claim based on the Electronic Funds Transfer Act, including §1693h, because in constructing Theoretical Overdrafts, Citizens Bank did not process the electronic funds transfer in a timely fashion.

### SEVENTH CLAIM FOR RELIEF
**Violations of State Unfair Trade Practice Laws**
**(On Behalf of the New Hampshire Subclass)**

154.    Plaintiff repeats paragraphs 1 through 108 above. This claim is asserted on behalf of the members of the putative New Hampshire Subclass.

155.    Defendant engages in deceptive and misleading business practices relating to the imposition of Overdraft Fees on consumers, in violation of New Hampshire consumer protection laws, including the Consumer Protection Law.

156.    Citizens Bank does not sufficiently or adequately inform, and deceives consumers as to its policies, of:

    a.  Charging Overdraft Fees when in fact the customer had never overdrawn his/her checking account;
    b.  Charging Overdraft Fees when it never had to pay out more funds than were in the customer's checking account;
    c.  Failing to maintain accurate account balance information on the bank's website, at the point of sale and at ATMs;
    d.  Re-ordering electronic debit transactions from the highest dollar amount to lowest dollar amount so as to deplete the customer's available funds as quickly as possible while maximizing the number of Overdraft Fees;
    e.  Charging exorbitant Overdraft Fees that bear no relationship to the actual costs and risks of covering insufficient funds transactions;
    f.  Failing to alert its customers that a debit card transaction or ATM transaction will trigger an Overdraft Fee, and failing to provide its customers with an opportunity to cancel such transactions; and
    g.  Manipulating transactions as "blocks" and charging Overdraft Fees for the same purchase at both authorization and settlement;
    h.  Violating the consumer protection act of New Hampshire through its overdraft policies and practices.

157.    The above practices and policies are not adequately represented in Citizens Bank's Account Agreement.  Such terms are deceptive in that consumers are not sufficiently informed of the true practices of the Defendant.

158.    The putative New Hampshire Subclass is sufficiently large to make joinder impracticable. Disposition of the claims in a class action will provide substantial benefits to both the parties and the Court.

159.    The rights of each member of the putative Subclass was violated in a similar fashion based upon Defendant's uniform actions.

160.    This action has been brought and may be properly maintained as a class action for

the following reasons:

    a.  Numerosity: Members of the putative Subclass are so numerous that their individual joinder is impracticable. Plaintiff id informed and believe, and on that basis allege, that the putative Subclass contains thousands and perhaps tens of thousands of members. The precise number of putative Subclass members is unknown to Plaintiff.

    b.  Existence and Predominance of Common Questions of Fact and Law: Common questions of law and fact exist as to all members of the putative Subclass. These questions predominate over the questions affecting individual putative Subclass members. These common legal and factual questions include, but are not limited to, the following:

        (i)  Whether Defendant violated New Hampshire's Consumer Protection Law.

        (ii)  Whether Defendant's actions constituted a breach of contract due to the failure to operate with good faith and fair dealing in transactions with checking account customers in seeking to maximize the amount of Overdraft Fees allocated to an account.

        (iii) Whether Defendant's actions constituted conversion due to Defendant's wrongful possession and detention of funds through unfair and deceptive practices.

        (iv)  Whether Defendant's actions constituted an unjust enrichment for them since Defendant has received and is holding funds rightfully belonging to Plaintiff and those similarly situated.

        (v)  The appropriate nature of class-wide equitable relief; and

    (vi) The appropriate measurement of restitution and/or measure of damages to award to Plaintiff and members of the putative Subclass. These and other questions of law or fact which are common to the members of the putative Subclass predominate over any questions affecting only individual members.c. Typicality: Plaintiff's claims are typical of the claims of the putative Subclass since Plaintiff was a banking customers of Citizens Bank as was each member of the putative Subclass. Furthermore, Plaintiff and all members of the putative Subclass sustained monetary and economic injuries arising out of Defendant's wrongful conduct. Plaintiff isadvancing the same claims and legal theories on behalf of herself and all absent putative Subclass members.

    d.  Adequacy: Plaintiff is an adequate representative of the putative Subclass because her interests do not conflict with the interests of the putative Subclass that she seeks to represent; she has retained counsel competent and highly experienced in complex class action litigation; and she intends to prosecute this action vigorously. The interests of the putative Subclass will be fairly and adequately protected by Plaintiff and her counsel.

    e.  Superiority: A class action is superior to other available means of fair and

efficient adjudication of the claims of Plaintiff and members of the putative Subclass. The injury suffered by each individual putative Subclass member is relatively small in comparison to the burden and expense of individual prosecution of the complex and extensive litigation necessitated by Defendant's conduct. It would be virtually impossible for members of the putative Subclass individually to redress effectively the wrongs done to them. Even if the members of the putative Subclass could afford such individual litigation, the court system could not. Individualized litigation presents a potential for inconsistent or contradictory judgments. Individualized litigation increases the delay and expense to all parties, and to the court system, presented by the complex legal and factual issues of the case.

f.  Defendant has acted, and refused to act, on grounds generally applicable to the putative Subclass, thereby making appropriate final injunctive relief with respect to the putative Subclass as a whole; and

g.  In the absence of a class action, Defendant would be unjustly enriched because it would be able to retain the benefits and fruits of its wrongful conduct.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff, on behalf of herself and the putative Class and Subclass they seek to represent, demand a jury trial on all claims so triable, and demand judgment as follows:

1.  Injunctive relief enjoining Defendant from charging Overdraft Fees, or causing Overdraft Fees to be charged, under their current policies and from engaging in the wrongful, unfair, and unconscionable practices alleged herein;

2.  Restitution of all Overdraft Fees paid to Defendant by Plaintiff and the putative Class and Subclass, as a result of the wrongs alleged herein, within the applicable statutes of limitations, in an amount to be determined at trial;

3.  Disgorgement of the ill-gotten gains derived by Defendant from its misconduct;

4.  Actual damages in an amount according to proof;

5.  Punitive and exemplary damages;

6.  Statutory penalties provided by the EFTA;

7.  Pre-judgment interest at the maximum rate permitted by applicable law;

8.     Costs and disbursements incurred by Plaintiff in connection with this action, including reasonable attorneys' fees pursuant to applicable law; and

9.     Such other relief as this Court deems just and proper.

## JURY DEMAND

Plaintiff, on behalf of herself and the putative Class and Subclass, demands a trial by jury on all issues so triable.

Dated: January 26, 2010

Jeffrey D. Kaliel
Hassan A. Zavareei
TYCKO & ZAVAREEI, LLP
2000 L Street, N.W., Suite 808
Washington, D.C. 20036
(202) 973-0900
(202) 973-0950 *facsimile*
jkaliel@tzlegal.com

*Attorneys for Plaintiff Jessica Duval*